# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY H. BRUSH,<br><br>            Plaintiff,<br><br>    v.<br><br>J. WOODFORD, et al.,<br><br>            Defendants. | CASE NO. 1:07-cv-01009-LJO-SKO PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE PARTIALLY GRANTED<br><br>(Doc. 102.) |

Plaintiff Gary H. Brush ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On September 16, 2010, Defendants Harper[1], Ortiz, Lee, Jasso, King, and Catalano ("Defendants") filed a motion for summary judgment. (Doc. #102.) Plaintiff filed an opposition on January 6, 2011. (Doc. #110-114.) Defendants filed a reply on January 18, 2011. For the reasons set forth below, the Court will recommend that Defendants' motion be partially granted.

**I.    Background**

   **A.    Plaintiff's Claims**

This action proceeds on Plaintiff's first amended complaint filed on June 30, 2008. (Doc. #19.) Plaintiff alleges that prison officials exhibited deliberate indifference toward his serious medical needs, used excessive force against Plaintiff, and retaliated against Plaintiff for filing prison grievances.

---

[1] Defendants indicate that Defendant Harper changed her last name to Sanchez. These findings and recommendations will refer to her as Harper.

On August 14, 2008, the Court screened Plaintiff's first amended complaint. (Doc. #24.) The Court found that Plaintiff's first amended complaint stated some cognizable claims. All other claims raised in Plaintiff's first amended complaint were dismissed on November 4, 2008. (Doc. #35.) Further, several claims that were found to be cognizable in Plaintiff's first amended complaint have since been dismissed from this action because Plaintiff failed to locate and serve the defendants or failed to exhaust his administrative remedies prior to filing suit. The following is a summary of the remaining claims in this action.

### 1.     Claims Against Defendants Harper and Ortiz

Plaintiff alleged that he seriously injured his back on May 30, 2005. Plaintiff claims Harper failed to provide any treatment or summon a physician to treat Plaintiff's condition. Plaintiff filed a grievance about his injury. Plaintiff claims Harper refused to provide Plaintiff with his medication on August 19, 2005 and September 1, 2005, in retaliation for filing grievances. Plaintiff further alleges that Ortiz refused to provide Plaintiff with any medical treatment on August 11, 2005, when Plaintiff was in unbearable pain for hours.

The Court determined that Plaintiff stated cognizable claims against Defendants Harper and Ortiz for deliberate indifference toward Plaintiff's serious medical needs in violation of the Eighth Amendment.[2] The Court also determined that Plaintiff stated a cognizable claim against Defendant Harper for retaliating against Plaintiff's First Amendment right to file grievances against the government.

### 2.     Claims Regarding December 26, 2005, Incident Against Defendants Lee and Jasso

Plaintiff claims that Lee and Jasso conspired to prevent Plaintiff from receiving his medications. Plaintiff also alleges that on December 26, 2005, Lee and Jasso refused to open Plaintiff's cell door, preventing Plaintiff from retrieving his medication.

///

---

[2]The Court also determined that Plaintiff stated a cognizable claim against Defendant Brummel based on these facts. However, Brummel was dismissed on April 1, 2009, because Plaintiff failed to effect service of process on him. (Doc. #75.)

The Court determined that Plaintiff stated cognizable claims against Lee and Jasso for deliberate indifference toward Plaintiff's medical needs in violation of the Eighth Amendment.[3]

### 3. Claims Against Defendants King and Catalano

Plaintiff alleges that King and Catalano took away Plaintiff's wheelchair on July 4, 2006. Plaintiff claims Catalano confiscated Plaintiff's wheelchair in retaliation against Plaintiff's grievances against medical staff.

The Court determined that Plaintiff stated cognizable claims against King and Catalano for deliberate indifference toward Plaintiff's medical needs in violation of the Eighth Amendment. The Court also determined that Plaintiff stated a cognizable claim against Defendant Catalano for retaliating against Plaintiff's First Amendment right to file grievances against the government.

### 4. Claims Regarding September 14, 2006, Incident Against Defendants Rangel, Cano, Gonzales, and Greene[4]

Plaintiff alleges that he was attacked by Rangel, Cano, Gonzales, and Greene on September 14, 2006. Plaintiff was allegedly dragged and dropped to the floor; Rangel and Cano then stomped on Plaintiff's neck, face and back. The defendants allegedly taunted Plaintiff for filing prison grievances.

The Court determined that Plaintiff stated cognizable claims against Rangel, Cano, Gonzales, and Greene for the use of excessive force in violation of the Eighth Amendment. The Court also determined that Plaintiff stated cognizable claims against Rangel, Cano, Gonzales, and Greene for retaliating against Plaintiff's First Amendment Right to file grievances against the government.

### B. Defendants' Motion for Summary Judgment

Defendants argue they are entitled to summary judgment because 1) Defendant Harper was not involved with the distribution of medications and Plaintiff received his medications, 2) Defendant Ortiz was not involved with Plaintiff's medical care and Plaintiff received appropriate

---

[3] The Court also determined that Plaintiff stated cognizable claims against Defendant Watts based on these facts. However, Watts was dismissed on November 30, 2009, because Plaintiff failed to effect service of process on him. (Doc. #86.)

[4] Defendants' motion does not seek summary judgment with respect to these claims.

1   medical care, 3) Defendant Lee did not prevent Plaintiff from receiving medical attention,
2   4) Defendants Lee and Jasso did not prevent Plaintiff from receiving his medication, and
3   5) Defendant King confiscated Plaintiff's wheelchair, and Defendant Catalano did not intervene
4   because Plaintiff did not present the required written authorization for the device when asked.

**II.     Summary Judgment Legal Standards**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. "A moving party without the ultimate burden of persuasion at trial-usually, but not always, a defendant-has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Federal Rule of Civil Procedure 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention

4

1  is material, i.e., a fact that might affect the outcome of the suit under the governing law, <u>Anderson</u>
2  <u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors</u>
3  <u>Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such
4  that a reasonable jury could return a verdict for the nonmoving party, <u>Anderson</u>, 477 U.S. at 248
5  (1986) ("summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if
6  the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

7        To establish the existence of a factual dispute, the opposing party need not establish a
8  material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be
9  shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>T.W.</u>
10 <u>Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings
11 and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475
12 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

13       In resolving the summary judgment motion, the Court examines the pleadings, depositions,
14 answers to interrogatories, and admissions on file, together with the affidavits, if any.  Federal Rule
15 of Civil Procedure 56(c).  The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S.
16 at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must
17 be drawn in favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v.</u>
18 <u>Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out
19 of the air, and it is the opposing party's obligation to produce a factual predicate from which the
20 inference may be drawn. <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal.
21 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).

22       Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show
23 that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole
24 could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for
25 trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

26 ///
27 ///
28 ///

## III. Discussion

### A. Claims Against Defendant Harper

Plaintiff claims that Harper violated his rights under the Eighth Amendment and retaliated against him for filing grievances.

#### 1. Eighth Amendment Legal Standards

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities." Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective "sufficiently culpable state of mind" requirement is met when a prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

"[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle, 429 U.S. at 105. In order to state an Eighth Amendment claim based on deficient medical treatment, a plaintiff must show: (1) a serious medical need; and (2) a deliberately indifferent response by the defendant. Conn v. City of Reno, 572 F.3d 1047, 1055 (9th Cir. 2009) (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). A serious medical need is shown by alleging that the failure to treat the plaintiff's condition could result in further significant injury, or the unnecessary and wanton infliction of pain. Id. A deliberately indifferent response by the

6

defendant is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference.  Id.  In order to constitute deliberate indifference, there must be an objective risk of harm and the defendant must have subjective awareness of that harm.  Id.

### 2. Retaliation Legal Standards

In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a Section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "[A] viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under Section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

### 3. Harper Is Not Entitled to Summary Judgment

Defendants argue that Harper is entitled to summary judgment because she did not withhold medications from Plaintiff.  Defendants argue that Plaintiff's allegations are incorrect because Harper administered the doctor's line and took inmates' vital signs during their clinic visits, but did not distribute medications to inmates as part of her job.  Defendants also argue that Plaintiff's medical records indicate that Plaintiff received Torodol through August 18, 2005 as ordered, and received his medication on September 1, 2005.  Defendants further argue that Harper's alleged actions did not chill Plaintiff's exercise of his First Amendment rights and, therefore, Plaintiff has no retaliation claim against Harper.  Defendants argue that Plaintiff has filed at least 45 grievances and two lawsuits since the incident, demonstrating the absence of a chilling effect on Plaintiff's First Amendment activities.

///

1    Plaintiff argues that Defendants' arguments are insufficient because Harper does not contend
2 that she cannot administer medication to inmates or that she did not withhold medication from
3 Plaintiff.  Plaintiff argues that even if the distribution of medication is not part of her regular duties,
4 she may have distributed medication while working overtime or when the prison was short on staff.

5    Plaintiff also argues that Defendant's evidence is unreliable. Defendants submitted a Medical
6 Administration Record ("MAR") indicating that Plaintiff received his medications on September 1,
7 2005.  Plaintiff argues that another nurse may have inadvertently initialed the wrong box.  Plaintiff
8 contends that he did not receive his medications and Harper knew that Plaintiff would be in severe
9 pain if he did not receive his medication.

10    Plaintiff also contends that Defendants' arguments with respect to the absence of a chilling
11 effect are unavailing because he "is a very determined man" and the absence of a chilling effect is
12 not fatal to his retaliation claim.  Plaintiff cites Rhodes v. Robinson, 408 F.3d 559 (9th Cir. 2005),
13 in support of his proposition that the relevant First Amendment inquiry is whether Defendants'
14 actions would have chilled or silenced a person of ordinary firmness, not whether Plaintiff's conduct
15 was completely silenced.

16    The Court finds that Defendants have failed to demonstrate that they are entitled to summary
17 judgment.  First, the Court notes that Defendants have failed to offer any argument or evidence
18 rebutting Plaintiff's allegation that Harper was deliberately indifferent toward Plaintiff's medical
19 needs on May 30, 2005.  Plaintiff alleged that he injured his back and Harper failed to provide any
20 treatment or summon a physician.  Plaintiff alleged that he was seriously injured and in extreme pain,
21 but Harper merely told Plaintiff there was no doctor on the yard and told Plaintiff to go back to his
22 cell.

23    Second, Plaintiff has submitted sufficient evidence to establish a genuine dispute regarding
24 whether Harper withheld medications from Plaintiff.  Defendants produced evidence that Harper was
25 not responsible for distributing medications and records indicating that Plaintiff received all his
26 ///
27 ///
28 ///

medications on September 1, 2005.[5] Plaintiff counters Defendants' evidence with his own declaration stating that he did not receive medications on August 19, 2005 or September 1, 2005, because Harper refused to distribute them to Plaintiff. Defendants respond that Plaintiff's assertions regarding the reliability of the medication distribution records should be disregarded because they are speculative. However, there is nothing speculative regarding Plaintiff's declarations. Plaintiff claims he did not receive medications on the days when the records indicate that he received medications. Plaintiff has personal knowledge of whether he received medication on a particular day. Therefore, there is a genuine factual dispute regarding whether Plaintiff received his medications on those days. Plaintiff also argues that Harper's evidence regarding her job duties misses the mark because even if Harper did not distribute medications as part of her regular duties, she may have distributed medications because the prison was short staffed.

Third, Plaintiff is not required to demonstrate an actual silencing of his First Amendment rights to prevail on his retaliation claim. In Rhodes, the Ninth Circuit stated "that the proper First Amendment inquiry asks 'whether an official's act would chill or silence a person of ordinary firmness from future First Amendment activities.'" Rhodes, 408 F.3d at 568 (quoting Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)) (emphasis in original). "'[I]t would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity." Id. at 1569. The Court finds that Plaintiff has submitted sufficient evidence at this stage to support his contention that withholding medications from an inmate is an action that would chill or silence a person of ordinary firmness from exercising his First Amendment rights.

The Court finds that Defendants have failed to demonstrate that they are entitled to summary judgment. The Court will recommend that Defendants' motion for summary judgment be denied with respect to Plaintiff's claims against Defendant Harper.

///

---

[5] Defendants fail to present any argument regarding whether Plaintiff received his medications on August 19, 2005, when Plaintiff alleges he did not receive Torodal. Defendants merely argue that Plaintiff received Torodal through August 18, 2005, as ordered, which does not contradict Plaintiff's allegation.

B.     **Claim Against Defendant Ortiz**

Plaintiff claims Defendant Ortiz violated his rights under the Eighth Amendment. See discussion supra Part III.A.1 (setting forth Eighth Amendment legal standards). Defendants argue that Ortiz is entitled to summary judgment because he was not involved with Plaintiff's medical care. Plaintiff alleges that Ortiz refused to treat Plaintiff's back pain, but Defendants argue that Plaintiff's medical records show that on August 11, 2005, at 8:50 a.m., a nurse called Dr. Kushner about Plaintiff's back pain. Defendants contend that Kusher was the on-call physician on August 11, 2005. Kushner returned the call and ordered 600 milligrams of Motrin, three times a day, which was provided to Plaintiff by a nurse. Defendants argue that the treatment that was ordered within fifteen minutes was appropriate. Defendants further argue that to the extent Plaintiff believes the treatment was inadequate, the disagreement does not rise to the level of a constitutional violation.

Plaintiff's opposition does not rebut Defendants' arguments with respect to Plaintiff's claim against Defendant Ortiz. Plaintiff's complaint alleges that he collapsed while walking to work on August 11, 2005. Plaintiff claims Ortiz was contacted over the phone but refused to see Plaintiff. Although the allegations in Plaintiff's verified complaint may be used as evidence to oppose Defendants' motion for summary judgment, Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) ("A verified complaint may be used as an opposing affidavit under Rule 56. . . . however, the verified complaint must be based on personal knowledge and set forth specific facts admissible in evidence."), Plaintiff has failed to demonstrate how he has personal knowledge that Ortiz was contacted over the phone or how Plaintiff has personal knowledge that Ortiz refused to see him.

The declaration in support of Plaintiff's opposition merely restates his allegation that "Ortiz refused to give medical care to a serious medical need." (Decl. in Supp. of Opp'n 1:23, ECF No. 114.) Further, in a declaration attached to his opposition, Plaintiff stated:

> [o]n or about August 11th, 2005 while walking to work I felt an unbelievable pain in my back & fell to ground[sic]. Medical and custody staff gurnied me to health services and left me there for 4 hours. RN V. Kovalenko said she called Doctor Kushner (KUSHNER) and he denied me any pain remedy.

(Pl.'s Statement of Disputed Factual Issues, Ex. A1, ECF No. 110.) The declaration suggests that

///

Kushner, not Ortiz, refused to see Plaintiff on August 11, 2005. Plaintiff submitted another declaration that states:

> [o]n or about Aug. 21, 2005, at or around 9:00 pm, I tried to urinate But my back gave out and I was in unbeleivable[sic] pain. My celly called for "man down" (Eric Weaver E74285). MTA Chapman, Now (C/O Chapman) responded and with help of custody, picked me up and put me on my bed. He, MTA Chapman, stated he would call Doctor to see if he could get me some pain relief. Doctor Ortiz Denied me any pain relief.

(Pl.'s Statement of Disputed Factual Issues, Ex. A2, ECF No. 110.) The facts related to Ortiz's actions on August 21, 2005, are not mentioned in Plaintiff's complaint and are not a part of this lawsuit. Even if the Court were to liberally construe Plaintiff's complaint to encompass these new facts, Plaintiff has not demonstrated how he has personal knowledge that Ortiz refused to provide Plaintiff with pain medication. Accordingly, the Court finds that Defendant Ortiz is entitled to summary judgment.

### C. Claim Against Defendant Lee Based on the August 12, 2005 Incident

Plaintiff claims Defendant Lee violated his Eighth Amendment rights on August 12, 2005, by ignoring Plaintiff's serious medical needs. See discussion supra Part III.A.1 (setting forth Eighth Amendment legal standards). Defendants argue that Lee is entitled to summary judgment because he did not refuse to summon medical staff on August 12, 2005. Defendants argue that Plaintiff's medical records show that by 11:45 a.m. on August 12, 2005, medical personnel had examined Plaintiff and ordered 60 milligrams of Torodol which was administered at noon.

Plaintiff argues that Defendant Lee should have summoned medical care at 9:00 a.m. and Lee acted with deliberate indifference by failing to summon medical staff earlier. Plaintiff also suggests that he did not receive Toradol until 4:00 p.m.[6] Plaintiff's declaration states that after his cellmate called "man down" at 9:00 a.m., Lee approached Plaintiff's cell, stated that Plaintiff was faking it, and did not push his alarm.

In their reply, Defendants argue that Plaintiff's assertions contradict statements made during Plaintiff's deposition. Defendants contend that Plaintiff, during his deposition, claimed that he went

---

[6] Plaintiff stated "[t]here are genuine issues of material fact . . . whether Plaintiff received the Toradol at noon or 1600HRS." (Brief in Opp'n to Defs.' Summ. J. Mot. 4:23-26, ECF No. 113.)

11

1  man down around 11:30 a.m. on August 12, 2005.  Defendant Lee was contacted and the medical
2  records show that medical personnel examined Plaintiff by 11:45 a.m. and Torodol was administered
3  at noon.
4      In a declaration attached to Plaintiff's opposition, Plaintiff claimed that Lee informed
5  Plaintiff at 9:00 a.m. that his doctor's line ducat had been canceled.  Plaintiff stated he was an
6  extreme pain and his cellmate asked Lee to contact medical staff.  MTA Holiday came to the cell at
7  10:00 a.m. and told Plaintiff that medical staff would take him to central health.  However, Holiday
8  never came back.  At 11:00 a.m., Plaintiff attempted to urinate.  Plaintiff fell and his cellmate called
9  man down.  Lee arrived and claimed Plaintiff was faking it.  Plaintiff claims that he was lying in his
10 own urine until a nurse arrived at 4:00 p.m. and administered a shot of pain medicine.
11     Plaintiff's statements do not necessarily contradict the statements he made during his
12 deposition.  Based on the declaration attached to Plaintiff's opposition, Plaintiff first summoned
13 medical attention on the morning of August 12, 2005.  Plaintiff contends that he should have been
14 given treatment that morning.  Based on Plaintiff's evidence, the Court finds that Plaintiff has
15 demonstrated that there is a genuine issue of material fact with respect to whether Lee acted with
16 deliberate indifference toward Plaintiff's medical needs.  Accordingly, the Court will recommend
17 that Defendants' motion for summary judgment be denied with respect to Plaintiff's claims against
18 Lee regarding the August 12, 2005, incident.

**D.    Claims Against Defendants Lee and Jasso Based on the December 26, 2005, Incident**

21     Plaintiff contends that Lee and Jasso violated his Eighth Amendment rights by preventing
22 Plaintiff from receiving his medications on December 26, 2005.  See discussion supra Part III.A.1
23 (setting forth legal standards for Eighth Amendment claims).  Defendants argue that Lee and Jasso
24 are entitled to summary judgment with respect to Plaintiff's medical treatment claim because neither
25 defendant refused to unlock Plaintiff's door to prevent him from receiving his medications on
26 December 26, 2005.
27     Plaintiff argues that Lee and Jasso provided a "deceptive" declaration because:
28 ///

>  they did not say that they opened his cell door. They just ignored the Plaintiff and did not open his cell door, they do not need to prevent him if the door is closed. They did not provide the MAR for December 2005, the "M.A.R" for Dec 26, 2005 showed that the initial do not correspond to any of the facsimile initials, and why is it circled? The MAR's provided by the Defendants were not verified to reflect that it is accurate, true and correct.

(Opp'n 3:7-13, ECF No. 113.) Plaintiff contends there is a "genuine issue[] of material fact whether . . . Defendants Lee and Jasso did not opened[sic] Plaintiff's door after being asked, were a refusal or preventive. . ." (Opp'n ECF No. 113.) Plaintiff's declaration states that "Lee and Jasso did not open Plaintiff's cell door, so, Plaintiff can get his pain medication after numerous requests from Plaintiff and other inmates to open his door." (Decl. in Supp. of Opp'n 1:24-26, ECF No. 114.)

The Court finds that Plaintiff has submitted sufficient evidence to demonstrate a genuine issue of material fact with respect to whether Lee and Jasso deliberately refused to open Plaintiff's cell door to prevent Plaintiff from receiving his medications. The Court will recommend that Defendants' motion for summary judgment be denied with respect to Plaintiff's claims against Lee and Jasso for preventing Plaintiff from receiving his medications.

### E. Claims Against Defendants King and Catalano

Plaintiff claims King and Catalano violated his Eighth Amendment rights by confiscating his wheelchair. See discussion supra Part III.A.1 (setting forth legal standards for Eighth Amendment claims). Plaintiff also claims King and Catalano retaliated against Plaintiff for filing grievances against the government. See discussion supra Part III.A.2 (setting forth legal standards for retaliation claims). Defendants argue that King and Catalano are entitled to summary judgment because they were not deliberately indifferent toward Plaintiff's medical needs when they confiscated his wheelchair. Defendants argue that Plaintiff's wheelchair was confiscated because Plaintiff did not present the required written authorization for the device. Defendants also argue that Plaintiff has no claim for retaliation because the exercise of his First Amendment rights was not chilled by King and Catalano's actions.

Plaintiff argues "[t]here are genuine issues of material fact whether . . . Plaintiff was authorized to possess the wheelchair and whether MTA King and LVN Catalano was not authorized by the doctor to confiscate the wheelchair and interfered with prescribed treatment, that the Plaintiff

1 cannot walk to chow and get hungry." (Opp'n 5:23-6:3, ECF No. 113.) Plaintiff contends that King
2 or Catalano could have called "LVN Hall to confirm that Plaintiff gave him the written
3 authorization." (Decl. in Supp. of Opp'n to Defs.' Mot. for Summ. J. 2:3-4, ECF No. 114.) Plaintiff
4 also argues that Defendants do not have the authority to confiscate Plaintiff's wheelchair without a
5 medical doctor's authorization.

6       As discussed previously, Plaintiff's continued attempts to file grievances and lawsuits are not
7 fatal to his retaliation claim. See discussion supra Part III.A.3. The Court finds that Plaintiff has
8 submitted sufficient evidence in support of his contention that confiscating an inmate's wheelchair
9 would chill or silence a person of ordinary firmness from continuing to exercise their First
10 Amendment rights.

11       The Court also finds that Plaintiff has submitted sufficient evidence in support of his claims
12 against King and Catalano. King and Catalano claim their actions were lawful because Plaintiff
13 failed to present the required authorization for the wheelchair. However, Plaintiff counters their
14 argument by noting that King and Catalano could have contacted a nurse to check if Plaintiff was
15 authorized to possess the wheelchair. Plaintiff claims that "he informed them that he gave his
16 prescription to LVN Hall because "CTC" told him to do so." (Decl. in Supp. of Opp'n 3:12-14, ECF
17 No. 114.)

18       The legal standards for Eighth Amendment claims under Section 1983 do not speak of
19 whether a prison official's actions are "authorized" or "unauthorized." The central inquiry in the
20 Eighth Amendment context is whether King and Catalano exhibited deliberate indifference toward
21 Plaintiff's serious medical needs, not whether King and Catalano's actions were authorized.
22 Notably, Defendants have failed to address whether King and Catalano were aware that Plaintiff
23 needed a wheelchair. If King and Catalano were aware that Plaintiff had a serious need for a
24 wheelchair because he could not perform everyday life activities without one, their actions violate
25 the Eighth Amendment irrespective of whether their actions were authorized.

26       Similarly, King and Catalano's actions may have been retaliatory regardless of whether they
27 were authorized. Notably, Defendants fail to offer any explanation why King asked Plaintiff to
28 present the written authorization for the wheelchair. Defendants do not attempt to dispute whether

14

Plaintiff needed the wheelchair. Based on Plaintiff's allegations, it appears that he had been using a wheelchair for a long period of time. Defendants also fail to provide any explanation regarding why they chose not to ask "LVN Hall" about Plaintiff's authorization forms. Plaintiff's evidence, therefore, supports an inference that King and Catalano acted with the intent to suppress Plaintiff's First Amendment conduct, regardless of whether their actions were authorized under prison policy. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) ("To prevail on a retaliation claim, a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct.") (internal citations and quotations omitted). "To show presence of this element on a motion for summary judgment, [Plaintiff] need only 'put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [Defendants'] intent.'" Id. (quoting Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003)).

Accordingly, the Court finds that Defendants are not entitled to summary judgment with respect to Plaintiff's claims against King and Catalano.

### F. Defendants Are Not Entitled to Qualified Immunity

Defendants argue that Defendants are entitled to qualified immunity because they did not violate Plaintiff's constitutional rights. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless of whether the government official's error 'is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Id. (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). Questions regarding qualified immunity should be resolved at the earliest possible stage in litigation because qualified immunity serves as an immunity from suit rather than a mere defense to liability. Id.

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence for resolving claims of qualified immunity. First, a court must decide whether the facts alleged by a plaintiff set forth a violation of a constitutional right. Saucier, 533 U.S. at 201. Second, if the plaintiff has satisfied the first step, the court must decide whether the right at issue was "clearly

established" at the time of defendant's alleged misconduct. Id. If the defendant did not violate a clearly established constitutional right, the defendant is entitled to qualified immunity from plaintiff's claims. Pearson, 129 S. Ct. at 816 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). However, the Supreme Court has since held that the Saucier sequence is not mandatory in all cases and courts may resolve the "clearly established" question first when the Saucier sequence would result in a "substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." Id. at 818.

Defendants only argue that Plaintiff fails to set forth any violation of his constitutional rights. Defendants do not raise any argument regarding whether the rights at issue were clearly established.[7] As discussed in this order, although Defendants are entitled to summary judgment with respect to Plaintiff's claim against Defendant Ortiz, Plaintiff's allegations and evidence are sufficient to support the remaining claims raised in his complaint. Defendants have failed to demonstrate that they are entitled to qualified immunity with respect to those claims.

## IV. Conclusion and Recommendation

The Court finds that Defendants are entitled to qualified immunity with respect to Plaintiff's claim against Defendant Ortiz. However, Defendants' motion for summary judgment should be denied in all other respects.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be PARTIALLY GRANTED;

2. Summary judgment be granted in favor of Defendant Ortiz; and

3. Defendants' motion for summary judgment be DENIED in all other respects.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned

---

[7] It is unclear why Defendants attempt to raise their qualified immunity defense without raising any arguments with respect to the "clearly established" prong of the qualified immunity analysis. If the Court had concluded that Defendants did not violate Plaintiff's rights, there would be no need to raise a qualified immunity defense.

"Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   February 15, 2011**              /s/ Sheila K. Oberto
                                            UNITED STATES MAGISTRATE JUDGE