# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

GARY H. BRUSH,

                Plaintiff,

    v.

J. WOODFORD, et al.,

                Defendants.

_____/

CASE NO. 1:07-cv-01009-DLB PC

ORDER FOLLOWING ORDER TO SHOW CAUSE HEARING, IMPOSING SANCTIONS, AND DISMISSING ACTION, WITH PREJUDICE

(ECF No. 191, 200, 202)

## I.      Procedural History

Plaintiff Gary H. Brush ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983, filed this action on July 16, 2007.  (ECF No. 1.)  On August 14, 2008, an order issued finding service of the complaint appropriate and the order directing service issued on September 29, 2008.  (ECF Nos. 25, 30.)  Defendants filed an answer and discovery opened on July 15, 2009.  (ECF No. 80.)  Following resolution of Defendants' motion for summary judgment, filed September 16, 2010, this action is proceeding on the first amended complaint against Defendants J. Harper, Lee, Jasso, Rangel, Gonzales, Cano, N. Greene, King, and Catalano.  (ECF No. 123.)

On April 6, 2011, the second scheduling order issued setting this action for trial on August 29, 2011.  (ECF No. 124.)  Plaintiff filed pretrial motions, including a motion for the attendance of incarcerated witnesses, which was partially granted on June 13, 2011.  (ECF No. 133.)  Plaintiff filed a motion for reconsideration of the order partially granting his motion for the attendance of incarcerated witnesses on July 5, 2011.  (ECF No. 139.)  At the request of the parties, this action was

reassigned to the undersigned on July 19, 2011. (ECF No. 149.) Due to the reassignment, the trial date was vacated and reset for November 1, 2011. (ECF No. 161.) On August 8, 2011, an order issued partially granting Plaintiff's motion for the attendance of incarcerated witnesses, and the transportation writs for Plaintiff and inmates Vaifanua, Abeyta, Cagadas, Washington, Serrano, Umanzor, Reeder, and Villiers were issued on September 7, 2011. (ECF No. 162, 177-185.)

On September 16, 2011, the Court received a letter from Vaifanua stating that he did not prepare an affidavit for this action and did not witness any of the events that occurred. (ECF No. 190.) On September 19, 2011, the Court received a letter from Reeder stating that he does not have any recollection of ever being housed at the same institution as Plaintiff and has no knowledge of the incidents in this action. (ECF No. 189.) On September 27, 2011, an order issued setting an order to show cause hearing, and the parties were granted an opportunity to file a responsive pleading. (ECF No. 191.) Upon notifying Defendants of the order to show cause hearing, defense counsel informed the Court that Serrano should also be transported for the hearing. On September 29, 2011, a letter was received from Umanzor stating that due to inconsistencies in the affidavit that he did not prepare he requested to be excluded from testifying in this action. (ECF No. 199.) Defendants filed a response to the order to show cause on October 7, 2011, and Plaintiff filed a response on October 13, 2011. (ECF Nos. 200, 202.)

A hearing on the order to show cause was held on October 19, 2011, to allow Plaintiff the opportunity to be heard. During the hearing, the Court heard testimony from Correctional Officer Cano, Vaifanua, Reeder, Umanzor, Serrano, and Plaintiff. The Court issues the instant order finding that terminating sanctions should be imposed upon Plaintiff for filing false affidavits in support of his motion for the attendance of incarcerated witnesses.

**II.**     **Legal Standard**

    **A.**     **Sanctions**

Federal courts have broad powers to impose sanctions against parties or counsel for improper conduct in litigation. The Court derives the power to impose sanctions on parties or their counsel from three primary sources of authority, "(1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that

unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power." Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001).

### 1.   **Rule 11**

Rule 11(b) of the Federal Rules of Civil Procedure provides that "[b]y presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:  (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;. . . [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. . . ."  Rule 11 imposes an objective standard of reasonableness, which applies to pro se litigants.  Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 892 F.2d 802, 811 (9th Cir. 1989).

Rule 11(c) provides for the imposition of appropriate sanctions for a violation of Rule 11(b) on any attorney, law firm or party that has violated the rule or is responsible for the violation committed.   Any sanction imposed must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. Fed. R. Civ. P. 11(c)(4).  Whether to impose sanctions is determined by the reasonableness of the inquiry into the law and facts.  G.C. & K.B. Investments v. Wilson, 326 F.3d 1096, 1109 (9th Cir. 2003).  "An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction." Fed. R. Civ. P. 11(c)(6).

### 2.   **Inherent Power**

The Court has inherent power to sanction parties or their attorneys for improper conduct. Chambers v. Nasco, Inc., 501 U.S. 32, 43-46 (1991); Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980); Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001).  This includes the "inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." Anheuser-Busch, Inc. V. Natural Beverage Distrib., 69 F.3d 337, 348 (9th Cir. 1995) (quoting Wyle v. R. J. Reynolds Indus., Inc., 709 F.2d 585,

1   589 (9th Cir. 1983)); see Combs v. Rockwell Intern. Corp., 927 F.2d 486, 488 (9th Cir. 1991)

2   ("Dismissal is an appropriate sanction for falsifying deposition").  Because dismissal is such a harsh

3   penalty, it should only be used in extreme circumstances.  Wyle, 709 F.3d at 589.  "It is well settled

4   that dismissal is warranted where . . . a party has engaged deliberately in deceptive practices that

5   undermine the integrity of judicial proceedings. . . ."  Anheuser-Busch, Inc., 69 F.3d at 348.

6                   **3.**     **Dismissal as Sanction**

7           In determining whether to dismiss an action, the Court must weigh "(1) the public's interest

8   in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of

9   prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and

10  (5) the availability of less drastic sanctions."  In re Phenylpropanolamine (PPA) Products Liability

11  Litigation, 460 F.3d 1217, 1226 (9th Cir. 2006) (internal quotations and citations omitted).  These

12  factors guide a court in deciding what to do and are not conditions that must be met in order for a

13  court to take action.  In re PPA, 460 F.3d at 1226 (citation omitted).

14  **III.**   **Discussion**

15          **A.**     **Hearing Testimony**

16          At issue here are three affidavits and Plaintiff's statement of testimony that were submitted

17  in support of Plaintiff's original motion and motion for reconsideration of the order granting in part

18  his motion for the attendance of incarcerated witnesses.  Plaintiff submitted affidavits allegedly

19  signed by Serrano on January 10, 2007; Reeder on May 17, 2007; and Umanzor on January 10, 2007.

20          At the hearing, Correctional Officer Cano testified that he was approached on three occasions

21  by Vaifanua who told him that he did not want to testify in this action.  Cano was also told by

22  Serrano that Plaintiff was offering to pay inmates to testify for him and had offered to forgive

23  Serrano's gambling debt if he testified at trial.

24          Vaifanua reviewed the declarations that Plaintiff provided to the Court and testified that,

25  while the signature appeared to be his, he did not prepare or sign them.  Vaifanua stated that he did

26  sign a blank paper given to him by Plaintiff.  The paper was attached to an inmate appeal form and

27  he signed it believing that it was a group appeal regarding the day room.  Vaifanua testified that he

28  was the third watch lead porter at the time the incidents alleged occurred and as such would not have

                                                4

had contact with Plaintiff when he was brought into the building.  Additionally, since Plaintiff alleges that he was placed in administrative segregation, only correctional officers would have been able to interact with him.  While he remembers Plaintiff being in a wheelchair that day, he did not observe any injuries or have any contact with him.

Reeder testified that neither the signature and handwriting on the affidavit bearing his name are his.  While Reeder recognizes Plaintiff, he only had conversations with him regarding football pools and never spoke with Plaintiff regarding any use of force incidents.  Reeder testified that if he had observed what was described in the affidavit he would remember the incident.

Umanzor testified that the signature on the affidavit bearing his name is not his.  He does not sign his name as it is presented on the affidavit.  Umanzor went to the "hole" around the date this incident occurred and he did not witness it.  Several months ago[1] an inmate porter, Soto, gave Umanzor the affidavit that Plaintiff had prepared to be signed.  Umanzor refused to sign it and told Soto to return it to Plaintiff because he did not see what was stated in the affidavit.

Serrano testified that, although he did sign the affidavit, he did not witness the incident.  At the time this incident occurred he was on the other side of the day room and heard a disturbance. When Plaintiff asked Serrano if he would help him with this case he agreed.  Plaintiff prepared the declaration and Serrano signed it.  He did not see or hear was is alleged in the affidavit and does not remember if he and Plaintiff spoke about what he had seen prior to the affidavit being prepared. Plaintiff and Serrano occasionally gamble and pay each other with food items, coffee, etc.  When questioned about Officer Cano's statement that Plaintiff had offered to pay him for testifying, Serrano hedged and then stated that he did make statements that could have been overheard by Officer Cano about getting Plaintiff to pay off his gambling debt if he testified, but he was just joking.

Plaintiff testified that he did not submit false declarations to the Court.  After he was released from administrative segregation, the inmates came up to him and offered to help him by testifying

---

[1] Plaintiff filed Umanzor's affidavit, along with several others, on July 5, 2011 as an exhibit to his motion for reconsideration of the Court's prior Order Granting in Part and Denying in Part his request for attendance of inmate witnesses.  The date above the signature line on Umanzor's affidavit is October 10, 2007.

about what had occurred. Plaintiff sat down with Reeder and watched him write out the affidavit. Since Plaintiff was concerned that Vaifanua might recant his testimony he had another inmate witness him sign the affidavit. Plaintiff spoke with Umanzor who asked him to write up the affidavit. After it was prepared he handed the affidavit to Umanzor who returned the signed affidavit to him several days later. Plaintiff argues that his witnesses are recanting because correctional officers have harassed and coerced them to change their testimony. Upon cross examination Plaintiff admitted that he has convictions for forgery.

## B.   Plaintiff's Conduct in Submitting Affidavits

For the reasons set forth in the following paragraphs the Court finds that Plaintiff's conduct in submitting the affidavits justifies the imposition of sanctions. Initially, the Court notes that upon receiving the transportation order, three of the eight inmates ordered to appear at trial voluntarily contacted the Court to indicate that false statements had been submitted to obtain their attendance at trial. It is highly unusual for an inmate, much less three inmates, to voluntarily contact the Court regarding false information submitted by another inmate. Although Plaintiff argues that there is a connection between Umanzor and Vaifanua because they work together, Reeder was housed at a different institution at the time the letters were prepared and had not been housed at Pleasant Valley State Prison since shortly after the alleged incident occurred in 2006.

Additionally, a review of the four affidavits submitted describing the September 14, 2006 incident reveals that the descriptions of the incident are remarkably similar. It seems highly unusual that four inmates would submit such a similar description of the events, although each inmate had a different vantage point to observe what allegedly occurred.

While Plaintiff alleges that Reeder and Umanzor signed the affidavits he submitted to the Court, the evidence shows otherwise. Reeder stated that he did not sign the affidavit. Comparing the writing on the affidavit and the letter Reeder submitted to the Court, they do not appear to be written by the same person. While there are some similarities, the differences are significant. The writing in the letter written by Reeder is larger and more rounded, while the affidavit writing is smaller and more angular. Additionally, Plaintiff testified that Reeder was transferred shortly after the September 14, 2006 incident. However, the Court notes that the affidavit is dated May 17,

1   approximately eight months later.  Reeder testified that he did not observe the incident and the

2   factual statements contained in the affidavit are not true.

3       Umanzor also stated that the signature on the affidavit was not his and the factual statements

4   submitted are not true.  Again a comparison of the signature on the affidavit with the letter he wrote

5   to the Court shows similarities, but the differences are noticeable.  Umanzor stated that he did not

6   sign his name the way it was on the affidavit, J. A. Umanzor.  His letter was signed Jose A. Umanzor

7   and the shape of the J and the end of his last name are noticeably different on the two documents.

8   While the affidavit is dated January 10, 2007, Umanzor testified that approximately three months

9   ago Plaintiff sent him the document to review and sign.  Therefore, it appears that the affidavit was

10  post dated to appear as if it was prepared around the time of the alleged incident.

11      From the review of the affidavits it appears that an effort was made to copy the writing style

12  and signature of Reeder and Unmazor.  The Court finds it significant that the affidavits allegedly

13  from Reeder and Umanzor appear to have been forged and Plaintiff has multiple convictions for

14  forgery.  Based upon the evidence submitted at the hearing the Court finds that Plaintiff knowingly

15  submitted fraudulent affidavits of Reeder and Umanzor.  Plaintiff argues that so many witnesses

16  observed the event that he had no reason to submit fraudulent affidavits.  While it is unclear exactly

17  what purpose Plaintiff sought to achieve, it is clear that the affidavits were submitted with an

18  improper purpose.

19      Serrano stated that the facts set forth in the affidavit are false, but did not remember if he

20  talked to Plaintiff about the incident prior to the affidavit being prepared.  It is unclear from the

21  testimony presented at the hearing whether Plaintiff was aware that the affidavit he submitted from

22  Serrano was fraudulent.  Additionally, the Court need not address the allegations regarding the

23  affidavit of Vaifanua as the finding that Plaintiff submitted two false affidavits to the Court is

24  sufficient to justify the imposition of sanctions.

25      **C.   <u>Sanctions</u>**

26      Having found that Plaintiff submitted false affidavits, the Court turns to the propriety of

27  dismissal as a sanction.  Initially, Rule 11 explicitly applies to pro se litigants and the express goal

28  of Rule 11 is deterrence.  <u>Warren v. Guelker</u>, 29 F.3d 1386, 1390 (9th Cir. 1994).  Pro se litigants

1   must follow the same procedural rules that govern other litigants.  <u>King v. Atiyeh</u>, 814 F.2d 565, 567

2   (9th Cir. 1987).  Therefore, the fact that Plaintiff is proceeding pro se does not insulate him from the

3   imposition of sanctions for his misconduct in prosecuting this action.  While a litigant proceeding

4   pro se is not held to precisely the same standards as an attorney, filing a false declaration would

5   violate the standard for any litigant.  Willful and bad faith conduct will not be excused because

6   Plaintiff is representing himself in this action.

7          This case has been pending since 2007, and the delay in these proceedings is due to

8   Plaintiff's conduct.  The expeditious resolution of litigation and the Court's need to manage its

9   docket weigh in favor of dismissal.  <u>See</u> <u>In re PPA</u>, 460 F.3d at 1227.  The Court has an enormous

10  caseload, and when litigants file fraudulent documents, the Court's ability to manage its docket and

11  guide cases toward resolution is significantly compromised.  <u>See</u> <u>id.</u>

12         As for the risk of prejudice to Defendants, there is no identifiable prejudice in this instance.

13  <u>See</u> <u>id.</u> at 1227-28.

14         Regarding the fourth factor, while public policy favors disposition on the merits and therefore

15  weighs against dismissal, it is Plaintiff's own misconduct which is at issue here and which has

16  stalled the case.  <u>See</u> <u>id.</u> at 1228.

17         Finally, there are no alternative sanctions which are satisfactory.  Monetary sanctions are not

18  available given that Plaintiff is incarcerated and proceeding in forma pauperis, making the imposition

19  of such sanctions of no consequence.  The Court could simply disregard the false declaration,

20  however allowing Plaintiff to continue this action would not deter repetition of such conduct or

21  comparable conduct.  Such a course would simply place Plaintiff back in the same position he was

22  in, without the false declaration.  Discovery is closed and the deadline for filing pretrial motions has

23  passed, rendering unavailable the Court's ability to impose any limitations on Plaintiff in those areas

24  as a sanction.  In sum, the Court finds dismissal is the only sanction that adequately redresses the

25  severity of Plaintiff's misrepresentations to this Court.

26  **IV.**   **Conclusion and Order**

27         Based on the foregoing, the Court finds that Plaintiff Gary Brush has intentionally submitted

28  false affidavits to the Court.  Accordingly, it is HEREBY ORDERED that:

1.     This action is DISMISSED, with prejudice, as a sanction for Plaintiff's filing false affidavits in support of his motion for reconsideration of the order granting in part the attendance of incarcerated witnesses;

2      All pending motions are terminated; and

3.     The Clerk's Office shall close this action.

IT IS SO ORDERED.

Dated:    **October 31, 2011**                          _____ /s/ **Dennis L. Beck** _____
                                                                      UNITED STATES MAGISTRATE JUDGE